# STATE OF LOUISIANA

## PARISH OF ORLEANS

---

SCHWARTZ & FERRY,
     Appellees,

    VS.

FRANK MANFRE,
    Appellant

No. 7411,

Court of Appeal.

---

The possession by the creditor of property of his debtor, with the letter's consent, for the purpose of paying himself out of his hire, is an acknowledgment of the debt, which interrupts prescription.

**Max Dinkelspiel, Judge.**

This controversy arises under the following state of facts:

Plaintiffs, a commercial firm, sue the defendant on a promissory note dated New Orleans, La., September 21, 1917, for the sum of $2424.80, note payable thirty days after date, made to the order of plaintiffs and payable at the Whitney-Central National Bank of the City of New Orleans; said note bearing eight per cent. interest from maturity until paid, together with ten per cent. attorneys' fees owing thereon if placed in the hands of attorneys.

Plaintiffs show that defendant paid them on account of said note on October 17, 1917, the sum of $293.75, and on November 27, 1917, a further credit on said note of $176.25; and that on January 16, 1918, plaintiffs placed said note in the hands of their attorneys for collection, and claim that under the terms of said note there became due, on the principal and interest from said date, ten per cent. attorneys' fees.

Plaintiffs further represent that on February 4, 1918, they received and credited on account of said debt the further sum of $1414.00, and they ask for a judgment against the defendant for the difference between the face of the note and the amounts credited, together with ten per cent. attorneys' fees on the principal and interest due on said note from January 16, 1918, for costs and general relief.

The defendant answers, admitting his signature to the obligation sued on, the credits given him by plaintiffs, and goes on to state, substantially, that he entered into an agreement with the plaintiffs for the purchase of 205 barrels of flour to be delivered to him on or before the 30th day of August, 1917, and he would pay for said flour the sum of $11.75 per barrel, or the total amount of $2408.75; that on the 21st day of September 1917 the plaintiffs tendered to respondent the said 205 barrels of flour purchased by him, but, as it was not convenient for him to pay the sum aforesaid,

being the purchase price of said flour, a new agreement and contract was entered into between plaintiffs and himself to the effect that said 205 barrels of flour was to be placed in the Importers Warehouse in the name of said plaintiffs and he, the defendant, would be allowed the privilege and right, during a period of thirty days, to take said flour in lots of 25 barrels at a time and to pay cash for same upon delivery; that under this understanding and agreement he did execute the note in question for the amount stated, payable at the time indicated, and that said flour was stored in the Importers Bonded Warehouse, and each payment made by him for flour delivered to him out of said lot of 205 barrels was to be credited on said note, and further, that he was to pay interest and storage charges on said flour; further, that in accordance with this contract and agreement defendant ordered delivered to him by plaintiffs 25 barrels out of the said lot of 205 barrels belonging to him in the said warehouse, and upon receipt of said 25 barrels he paid plaintiffs the sum of $293.75, which was placed to his credit on said note; that subsequently defendant called upon the plaintiffs to deliver to him another lot of 25 barrels of the 205 barrels stored in said warehouse, but that plaintiffs delivered to him only 15 barrels of flour, which defendant received and paid for at the same rate, $11.75 per barrel, amounting to the further sum of $176.25, which was also credited on said note. He further states that after he had received the said 15 barrels of flour he repeatedly and at intervals requested plaintiffs to deliver to him the balance of said 205 barrels of flour in the warehouse, but that plaintiffs refused, neglected and failed to do so, and respondent, after making every effort to get the remainder of said 205 barrels of flour without success, was obliged to procure the flour he needed elsewhere. He alleges further that he is informed and believes that said plaintiffs, after delivering to him the two lots out of the 205 barrels of flour, amounting in toto to 40 barrels, sold the remaining 165 barrels, or otherwise disposed of them, to their advantage, and therefore they were not able to deliver any more of the said flour

124

to him after the 15 barrels, and plaintiffs were unable to comply with his request to deliver to him the remainder of said 205 barrels of flour; that the proceeds of the said 165 barrels of flour sold by the said plaintiffs, or otherwise disposed of by them, should have been credited on the said promissory note, and he believes and has every reason to suppose that the said 165 barrels of flour were sold by plaintiffs at a price equal to the balance due on said note and plaintiffs received from the sale or other disposition of said 165 barrels of flour a sum sufficient to pay the balance due on his note held by them, and therefore plaintiffs should have cancelled said note and returned same to respondent, and that plaintiffs have been repeatedly requested to inform respondent what disposition they made of said 165 barrels of flour remaining out of the invoice of 205 barrels after the delivery to him of 40 barrels, and, if plaintiffs sold or otherwise disposed of same, what was the amount received as the proceeds of said sale, but plaintiffs wilfully and deliberately refused to give him any information regarding the said 165 barrels of flour or what disposition ever was made of same; that he executed and delivered the note sued on to plaintiffs to represent the purchase price of a certain invoice of flour consisting of 205 barrels, stored for the account of defendant in the Importers Bonded Warehouse; that he never received more than 40 barrels of the said invoice, and the said plaintiffs have failed and refused to deliver to him the balance, amounting to 165 barrels, cannot demand payment of said note until they have accounted to him for the said 165 barrels of flour. He further alleges and believes that plaintiffs sold the said 165 barrels of flour and received as the purchase price thereof an amount in excess of the amount remaining after crediting him on said note the amounts paid by him as the price of the 40 barrels delivered; that he is entitled to a credit on the note sued on for the proceeds of sale of said 165 barrels of flour disposed of by plaintiffs, and said credit, together with the credit of $470.00 paid by respondent for the 40 barrels received, would equal the sum in said promissory note herein sued on; that

■

125

had plaintiffs tendered respondent the 165 barrels of flour on the 21st. day of October 1917, the date when the note sued on was due and payable, and had he refused on that day to take said 165 barrels of flour and pay said note, then and in that event plaintiffs could have easily sold said flour upon the open market at a price equal if not in excess of the price defendant had agreed to pay for same, namely, $11.75 per barrel, and the same being placed to his account would have fully discharged any indebtedness to plaintiffs and cancelled his obligation on said note; that subsequently, and particularly after the 21st. day of October 1917, the market price of flour in New Orleans began to decline, and that any sale after the said date would have to be at a price less than $11.75. He therefore prays for judgment in his favor and against plaintiffs, rejecting their demand, dismissing their suit at their cost, for all costs and for general relief.

To which answer the attorney affixed his affidavit, stating that the facts and allegations of said answer were true and correct, to the best of his knowledge, information and belief.

The only witnesses appearing before the lower court were one of the plaintiffs, Mr. Ferry, and the defendant himself.

Mr. Ferry's testimony, without quoting it in the main, satisfies us that the documents appended to the transcript filed herein show that the draft for the full amount of the 205 barrels of flour in question, at the price named, $11.75 per barrel, was sent, with bill of lading attached, for account of the defendant; that the defendant, unable to pay the cash required, finally induced plaintiffs to extend him credit for the full amount due them as represented by the note sued on; that desiring to relieve defendant of paying the large amount for the entire invoice, as he had agreed to do, they gave him the opportunity of taking 25 barrels of this flour out of the lot of 205 barrels, at the price stipulated, about which there is no dispute, and to do so within thirty days; that on one occasion defendant paid for the first 25 barrels, and subse-

quently, when the other 25 barrels were ready for delivery, not having the ready money to pay for same, he accepted 15 barrels under the same terms and for the same amount; and those things preceeded until the 26th. of January 1918, when plaintiffs addressed the defendant demanding payment for the balance of the flour, 165 barrels, which defendant did not comply with.

On the 26th of January 1918, the defandant addressed this letter to plaintiffs:

"New Orleans, La., January 26, 1918.

"Messrs. Schwartz & Ferry,
   New Orleans, La.
"Gentlemen:
      "Enclosed please find check amounting to $293.75, covering your invoice of December 22, which balances my account with you.
                        "Yours very truly,
                           (Signed) "Frank Manfre."

Subsequently, plaintiffs answered to the following effect:

"Mr. Frank Manfre,
   2401 Palmyra Street,
      New Orleans, La.

"Dear Sir:
      "Please take notice that on Tuesday, January 22, 1918, at the hour of 1 O'clock, I, representing the firm of Schwartz & Ferry, of New Orleans, Louisiana, in the presence of two witnesses, shall be at N.O.& N.E. RR., shed H, corner of St. Louis and Villere Streets in this city, there to offer and tender to you the 280 sacks of Silver Plume Flour which the said firm of Schwartz & Ferry holds for your account, the delivery to be made to you upon your paying the full amount due on your note which we hold, which note was given to represent the purchase price of said flour.
                        (Signed)"George L. Ferry,
                           "Representing Schwartz & Ferry.'

We have carefully read all the testimony in this cause and we are convinced that plaintiffs have carried out fully their contract with the defendant, and that the fault of non-delivery was that of the defendant, solely and wholly. The indulgences granted defendant and the opportunity given him to pay the amount due plaintiffs were abundant, often extended, and re-extended for defendant's benefit. The truth of the matter, in our opinion, is that he never was able to pay in cash the amount represented by his note, and that when he gave the order for the 205 barrels of flour in question he knew,

■

or ought to have known, this fact. Further than that, we are convinced that after various promises from the defendant to the plaintiffs to accept the balance of this flour, to-wit, 165 barrels, from time to time, he was unable, although pretending otherwise, to carry this into effect; so that when finally it became necessary to protect themselves plaintiffs got the very highest price that the market then afforded, to-wit, $10.10 per barrel, - the market quotation at the time was $10.00 per barrel, - gave the defendant the benefit of whatever they received, and credited his note not only with the cash payments he made but for the value they sold the flour for.

The burden of proof falls upon the defendant, when he alleges the want or failure of consideration of the note sued upon.

Irving v. Edrington, et al., 41 A., 671;

Yowell & Williams v. Walker, 118 La., 28;

Scovell v. Gill, 30 A., 1207.

"The party who asserts a change or modification in the contract after it is made has the burden of establishing his assertion."
9th Cyc., Contracts, - page 761;
Romero & Co., 113 La., 111.

"Where, in a contract to deliver a certain thing, no time for the delivery is fixed, the legal implication is that it shall be delivered within a reasonable time from the date of the contract".
Bartley v. City, 30 A., 264.

"A letter may accomplish all the purposes of a default."
Woodstock Iron Works v. Co., 115 La., 833.

"The burden of proof was upon the defendant to establish his allegation, as the note carries with it the presumption of consideration. It may be that plaintiff is indebted to defendant, as he swears; but plaintiff denies it under oath, and his denial destroys defendant's testimony."
Christen v. Keiffer, 23 A., 501.

"The judgment of the lower court on questions of fact is presumed to be correct and will be affirmed on appeal unless it is shown to be manifestly erroneous."
O'Neil v. Morris, 13 Ct. of Appeal, p. 68.

We have carefully noted the authorities cited us by the attorneys of the defendant in their brief. The first case, of Van v. Tounne, which they quote to be found in 13 A., p. 225, is an error; the same is found in the 13 La., and, in our opinion, has no application to the present case. The same can be said of the case quoted by counsel in the 45th Annual, p. 1289, - Andris

Jeachams v. Richard M. Ong: instead of being authority which aids defendant, it is, on the contrary, the law of the case, and is again referred to and approved in the 115th Annual, p. 830, in the case of Woodstock Iron Works v. Standard Pulley Manufacturing Company; and, so far as applicable to the present cause, is more favorable to plaintiffs, and of little help to the defendant.

For these reasons, the judgment rendered by the court a que is affirmed.